UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MISAEL CORDERO, | |
| Plaintiff, | Civil Action No. 23-373 (JXN) |
| v. | |
| IHUOMA NWACHUKWU, et al., | OPINION & ORDER |
| Defendants. | |

**CLARK, Magistrate Judge**

**THIS MATTER** comes before the Court on three motions by *pro se* plaintiff Misael Cordero ("Plaintiff"): (1) a motion for leave to file a late notice of claim under the New Jersey Tort Claims Act [Dkt. No. 4]; (2) a motion for the appointment of *pro bono* counsel pursuant to 28 U.S.C. § 1915(e) [Dkt. No. 3]; and (3) a motion to stay the deadline for the filing of an affidavit of merit pending disposition of Plaintiff's motion for the appointment of *pro bono* counsel [Dkt. No. 14]. Defendants Ihuoma Nwachukwu, Abu Ahsan and Alejandrina Sumicad (collectively "Defendants") oppose Plaintiff's motion for leave to file a late notice of claim [Dkt. No. 15] and Plaintiff's motion to stay the deadline for the filing of an affidavit of merit [Dkt. No. 17]. Plaintiff's motion for *pro bono* counsel is unopposed. For the reasons set forth below: (1) Plaintiff's motion for leave to file a late notice of claim [Dkt. No. 4] is **DENIED**; (2) Plaintiff's motion for the appointment of pro bono counsel [Dkt. No. 3] is **DENIED without prejudice**; and (3) Plaintiff's motion to stay the deadline for the filing of an affidavit of merit [Dkt. No. 14] is **DENIED as moot**.

**I.    BACKGROUND**

Plaintiff's Complaint in this action arises out of Plaintiff's allegations that he was

wrongfully denied medical care while incarcerated at New Jersey State Prison and East Jersey State Prison. *See* Dkt. No. 1, Complaint. Plaintiff claims that he "has a family history of heart diseases" and "started suffering – on and off – from shortness of breath, upper back pain, high blood pressure, and a feeling that his heart was skipping a beat" while incarcerated at New Jersey State Prison. Complaint at ¶ 1-2. Plaintiff alleges that he "personally informed" Defendants Ahsan and Nwachukwu of the symptoms he was experiencing on "numerous occasions" and that Defendants Ahsan and Nwachukwu "repeatedly and adamantly assured" him that "nothing was wrong with his heart, and that [his] symptoms were caused by having to eat the bad prison food . . . ." *Id.* at ¶ 3-4.

According to Plaintiff, Defendants Ahsan and Nwachukwu refused his request to be referred to a cardiologist and "place[d] . . . on diet meals" because they wanted to "save money to their employer" despite being "trained and well experienced medical providers" who knew that "not sending [Plaintiff] to a cardiologist and refusing to prescribe him diet food would harm [his] health and put his life at risk." *Id.* at ¶ 6-8. On an unspecified date, Plaintiff claims he "began to sweat profusely, got really dizzy, and was having difficulty breathing," which led to Plaintiff being "taken to the prison clinic on a wheelchair." *Id.* at ¶ 10. Although Plaintiff "told the nurse at the prison clinic that he believe[d] he was having a heart attack" and requested to be transported to a hospital, Plaintiff's request was denied and Defendants Ahsan and Nwachukwu again purportedly refused to refer Plaintiff to a cardiologist. *Id.* at ¶ 11-12.

Subsequently, in July of 2019, Plaintiff was transferred to East Jersey State Prison. *Id.* at ¶ 14. Plaintiff alleges that "[u]pon arrival," he informed Defendant Sumicad of his purported cardiac symptoms and again requested that he be referred to a cardiologist and prescribed diet meals. *Id.* at ¶ 15. Defendant Sumicad, however, "intentionally refused" Plaintiff's requests. *Id.* at ¶ 16.

2

On March 4, 2022, Plaintiff "started suffering from dizziness, chest pain, and numbness of his left arm" and was subsequently transported to "Rahway University Hospital" in an ambulance. *Id.* at ¶ 22. Plaintiff claims that after arriving at the hospital, the medical staff confirmed he had suffered a heart attack. *Id.* at ¶ 23. The next day, after Plaintiff suffered a second heart attack, "it was discovered that Plaintiff [had] four blockages of his heart veins" and he was transferred to another hospital for heart surgery. *Id.* at ¶ 24-25.

According to Plaintiff, a heart surgeon, identified by Plaintiff as Frederic F. Sardari, "performed a quadruple-by-passed surgery," subsequent to which Plaintiff was "interrogated extensively by members of a cardiology team" who then advised Plaintiff that his "heart attacks, the blockages, and the surgery could have been avoided if Plaintiff would have been provided with timely access to a cardiologist and a proper diet." *Id.* at ¶ 26-27. Plaintiff further alleges that his "cardiology team" explained that "any medical provider should have been able to determine that prompt cardiac medical treatment and a good diet were needed because Plaintiff's early symptoms and family history of heart diseases are universal medical awareness of the fact that immediate cardiac medical treatment was imperative." *Id.* at ¶ 28.

Plaintiff claims that on May 17, 2022 he "filed a paper Inquiry" which was "ignored." *Id.* at 29. Then, on June 8, 2022, Plaintiff purportedly filed a "paper grievance," which was also "ignored." *Id.* Thereafter, on July 23, 2022, Plaintiff "sent a letter to the Administration of East Jersey State Prison asking the prison Administration to intervene . . . but the Administration never answered Plaintiff's letter." *Id.* After not receiving a response to his July 23, 2022 letter, Plaintiff claims to have sent a "certified letter to the Commissioner of the Department of Corrections . . . to establish that the administrative remedy system was made unavailable." *Id.*

Plaintiff's Complaint in this matter is dated January 13, 2023 and was filed with this Court

on January 23, 2023. *See* Complaint. The Complaint asserts two causes of action against Defendants for medical malpractice and deliberate indifference to serious medical needs. *Id.* Plaintiff's present motions seeking leave to file a late notice of claim and the appointment of *pro bono* counsel were filed with the Complaint.

## II. DISCUSSION

### A. Motion for Leave to File Late Notice of Claim

The New Jersey Tort Claims Act (the "NJTCA" or the "Act") provides that "no action shall be brought against a public entity or public employee under [the Act] unless the claim upon which it is based shall have been presented in accordance with the procedures set forth in this Chapter." N.J.S.A. § 59:8-3. The purpose of the Act "was to reestablish the immunity of public entities while coherently ameliorating the harsh results of the [sovereign immunity] doctrine." *Beauchamp v. Amedio*, 164 N.J. 111, 115 (2000). To this end, the Act requires a claimant to sign and file a notice of tort claim with the public entity within 90 days of the accrual of the cause of action. *See Tripo v. Robert Wood Johnson Med. Ctr.*, 845 F. Supp. 2d 621, 626 (D.N.J. 2012) (citing N.J.S.A. § 59:8-8). Importantly, a failure to timely serve a notice of claim will result in the claimant being "forever barred from recovering against [the] public entity or public employee." N.J.S.A. § 59:8-8.

The Act does, however, provide courts with limited discretion to allow for the late filing of a notice of claim. Specifically, a court may permit the late filing of notice where a party seeks leave by motion within one year of the claim accrual date, provided that: (1) the claimant seeking to file a late claim shows reasons constituting "extraordinary circumstances" for his or her failure to meet the 90-day filing requirement; and (2) the defendant(s) are not "substantially prejudiced thereby." N.J.S.A. § 59:8-9. "The existence of 'extraordinary circumstances' is to be determined

4

by a court on a case-by-case basis." *Tripo*, 845 F. Supp. 2d at 627; *see id.* (quoting *Beauchamp*, 164 N.J. at 118) (noting "the New Jersey Supreme Court has explained that the purpose of adding the phrase 'extraordinary circumstances'" to the NJTCA was to "raise the bar for the filing of late notice from a 'fairly permissive standard' to a 'more demanding one'").

The Court must engage in a "sequential analysis" to determine whether a notice of claim was timely filed. *Beauchamp*, 164 N.J. at 118. The New Jersey Supreme Court has explained:

> The first task is always to determine when the claim accrued. The discovery rule is part and parcel of such an inquiry because it can toll the date of accrual. Once the date of accrual is ascertained, the next task is to determine whether a notice of claim was filed within ninety days. If not, the third task is to decide whether extraordinary circumstances exist justifying a late notice. Although occasionally the facts of a case may cut across those issues, they are entirely distinct.

*McDade v. Siazon*, 208 N.J. 463, 475 (2011) (quoting *Beauchamp*, 164 N.J. at 118–19). "It is a common and regrettable occurrence for accrual and extraordinary circumstances to be treated as interchangeable and for courts and litigants to overlook the primary question of accrual and directly confront the ultimate question of extraordinary circumstances. What is important is to understand the framework of a Tort Claims notice analysis and to follow it." *Beauchamp*, 164 N.J. at 119.

A claim "accrues" under section 8-1 of the Act "on the date of the accident or incident that gives rise to any injury, however slight, that would be actionable if inflicted by a private citizen." *Beauchamp*, 164 N.J. at 123, 751 A.2d 1047. "In the context of a medical malpractice action, a cause of action generally accrues on the date that the alleged act or omission occurred." *Baird v. Am. Med. Optics*, 155 N.J. 54, 65 (1998); *see also Beauchamp*, 164 N.J. at 117 (stating that a claim accrues on the "date of the incident on which the negligent act or omission took place").

However, the discovery rule applies when "the victim either is unaware that he has been injured or, although aware of the injury, does not know that a third party is responsible."

*Beauchamp*, 164 N.J. at 117. The discovery rule delays the accrual of a claim until "the injured party discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." *McDade*, 208 N.J. at 478-79 (quoting *Lopez v. Swyer*, 62 N.J. 267, 272 (1973)). Under the discovery rule, the accrual date has been described as the time which an injured party had "both of the two pieces of information that are key to the discovery rule, namely an injury and 'facts suggesting that a third party may be responsible.'" *Maher v. County of Mercer*, 384 N.J. Super. 182, 188 (2006) (quoting *Ayers v. Jackson Twp.*, 106 N.J. 557, 582 (1987)).

Here, while Plaintiff acknowledges that his claim was not filed with 90-day deadline, Plaintiff does not explicitly identify the date upon which he contends his claim accrued. Plaintiff states only that the "incidents relevant to [his] motion and . . . lawsuit occurred for many years all the way to a few months ago when they were made known to Plaintiff." Dkt. No. 4 at p. 2. Defendants, in their opposition to Plaintiff's motion, argue that Plaintiff's claims accrued, at the latest, "on or about March 8, 2022, which Plaintiff underwent bypass surgery." Dkt. No. 15 at p. 2. Without foreclosing any future finding that Plaintiff's claim accrued prior to his March 8, 2022 surgery, the Court agrees with Defendants that for the purposes of the present motion, March 8, 2022, the date of Plaintiff's surgery, is the latest date upon which Plaintiff's claims accrued.

Having found that March 8, 2022 is the latest possible date of accrual for Plaintiff's claims, it is clear that Plaintiff's Complaint, which is dated January 13, 2023, was filed well beyond the 90-day deadline. Accordingly, the Court must determine whether extraordinary circumstances justify a late claim notice "within one year" of accrual of the claim. N.J.S.A. 59:8-9.

The NJTCA "does not define what circumstances are to be considered 'extraordinary' and necessarily leaves it for a case-by-case determination as to whether the reasons given rise to the

level of 'extraordinary' on the facts presented." *Lowe v. Zarghami*, 158 N.J. 606, 626 (1999) (quoting *Allen v. Krause*, 306 N.J. Super. 448, 455 (App. Div. 1997)); *Rogers v. Cape May Cnty. Off. of Pub. Def.*, 208 N.J. 414, 428 (2011). "Accordingly, in analyzing whether there were extraordinary circumstances, a judge's focus must be directed to the evidence that related to the claimant's circumstances during the ninety-day accrual period." *Nogueria v. IDT Int'l Corp.*, No. A-0694-20, 2021 WL 6012798, at *2 (N.J. Super. Ct. App. Div. Dec. 16, 2021) (citation omitted).

Plaintiff raises two separate "extraordinary circumstances" which purportedly prevented him from timely filing his notice of tort claim. First, Plaintiff contends that "[d]ue to the Covid-19 pandemic all prisons in New Jersey, including East Jersey State Prison where Plaintiff is incarcerated have been on many lock downs" which "made it impossible for Plaintiff to prepare, copy and file a Notice of Tort and his lawsuit any sooner." Dkt. No. 4 at p. 2. Secondly, Plaintiff argues that he was "recovering from two heart attacks and opened-heart surgery" which likewise "made it impossible" for Plaintiff to file his Complaint and the present lawsuit "sooner." *Id.*

The Court will first address Plaintiff's contention that Covid-19 related prison restrictions prevented timely filing. In opposition to Plaintiff's motion, Defendants argue that "[b]y 2022, Covid-19 had largely receded" and that while "some restrictions may have remained in place in East Jersey State Prison, Plaintiff does not detail those restrictions or explain how these restrictions preventing him from completing a notice of tort claim." Dkt. No. 15 at p. 3.

According to Plaintiff, the "Covid pandemic has caused major delays to the access of the prison law library making it extremely hard and slow for [Plaintiff] to prepare, copy and file legal documents" and "East Jersey State Prison still forces inmates to practice social distance and wear masks." Dkt. No. 4 at ¶ 4-5. In *Diloreto v. Miller*, No. CV2120366GCDEA, 2022 WL 1157357, at *1 (D.N.J. Apr. 19, 2022), the Court granted the plaintiff's request for leave to file a late notice

7

of claim under the NJTCA finding that the plaintiff, who was incarcerated, "was subject to a clearly extraordinary circumstance in the form of COVID-related prison lockdowns." However, the circumstances of the claim in *Diloreto* differ significantly from the circumstances present in this matter. In *Diloreto*, the plaintiff's claim accrued in April 2021 and the plaintiff mailed his notice of claim on July 20, 2021, resulting in a filing delay of "at most a few weeks after the expiration of the ninety-day statutory period." *Diloreto*, 2022 WL 1157357, at *2. Here, Plaintiff filed his Complaint and the present motion approximately ten months after the accrual of claim.

Furthermore, the date of Plaintiff's injury in this matter was March 8, 2022, roughly two years past the onset of the Covid-19 pandemic and nearly a year beyond the April 2021 injury at issue in *Diloreto.* Although Plaintiff may have been subject to certain lockdowns and social distancing requirements which resulted in delays in his access to the law library, "courts have recognized that difficulties attendant to prison life, such as solitary confinement, restricted access to the law library and an inability to secure court documents, are routine restrictions of prison life . . . ." *United States v. Green*, No. 07-CR-271, 2013 WL 606341, at *3 (W.D. Pa. Feb. 19, 2013); *see also Brown v. Passaic Cnty.*, No. A-3050-10T2, 2012 WL 2505635, at *1 (N.J. Super. Ct. App. Div. July 2, 2012) (denying motion for leave to file late notice of claim by incarcerated *pro se* plaintiff who was in solitary confinement "at all times relevant to the motion"). While Plaintiff may have been delayed in his filing as a result of restrictions implemented by East Jersey State Prison, Plaintiff has failed to demonstrate that those restrictions amount to an extraordinary circumstance attributable to the Covid-19 pandemic for an injury which occurred in March of 2022.

When evaluating whether a medical condition constitutes an extraordinary circumstance, courts look to the "severity of the medical condition and the consequential impact" on the

claimant's ability to seek redress and pursue a claim. *D.D. v. Univ. of Med. & Dentistry of New Jersey*, 213 N.J. 130, 150, 61 A.3d 906, 917 (2013). Specifically, a claimant must demonstrate a medical condition during the ninety-day time period in which the notice was to be filed that, when viewed objectively, was "severe, debilitating, or uncommon" and prevented "attend[ing] to the filing of a claim." *Id.*

Plaintiff claims that it was "impossible" to pursue this matter "sooner" because he was "recovering from two heart attacks and opened-heart surgery." Dkt. No. 4 at p. 2. While the Court does not doubt that Plaintiff was indeed in a medically vulnerable state following his surgery, the condition Plaintiff claims to have been in during the ninety-day time period in which the notice was to be filed does not rise to the level of the medical conditions found to be so "severe, debilitating, or uncommon" as to establish extraordinary circumstances. *See, e.g., Jeffrey v. State*, 468 N.J. Super. 52, 55 (App. Div. 2021) (finding extraordinary circumstances where the plaintiff was rendered a quadriplegic after an accident and remained completely disabled and unable to perform even rudimentary movements); *Mendez v. S. Jersey Transp. Auth.*, 416 N.J. Super. 525, 533-35 (App. Div. 2010) (determining the plaintiff's injuries and memory loss sustained in a motor vehicle accident that required weeks of hospitalization qualified as an extraordinary circumstance); *Maher v. Cnty. of Mercer*, 384 N.J. Super. 182, 189-90 (App. Div. 2006) (finding extraordinary circumstances where the medical condition of a plaintiff, who contracted staph infection, was so severe that she was treated by an induced coma and not expected to survive).

The Court is further convinced as to the lack of extraordinary circumstances in this matter by Plaintiff's numerous filings of administrative grievances following his surgery. Plaintiff filed a "paper grievance" on May 17, 2022, which was within the 90-day notice period, sent a letter to East Jersey State Prison's administrator on June 8, 2022, and subsequently sent another letter to

9

the Department of Corrections. Thus, while Plaintiff claims it was impossible for him to file his notice during the period subsequent to his surgery, Plaintiff made demonstrable efforts to pursue various other avenues of redress during that same time, leading the Court to conclude that Plaintiff's circumstances did not render pursuit of his claims in this matter "impossible." *See Brown*, 2012 WL 2505635, at *1 (finding lack of extraordinary circumstances where incarcerated *pro se* plaintiff in solitary confinement made "expansive efforts" to "prepare for various other legal proceedings" during the relevant time period despite claiming he "had limited access to legal and paralegal assistance").

Based on the foregoing, the Court finds that Plaintiff has failed to demonstrate extraordinary circumstances for his failure to comply with the NJTCA's notice requirement.[1] Accordingly, Plaintiff's motion to leave to file a late notice of claim [Dkt. No. 4] is DENIED.

### B. Motion for *Pro Bono* Counsel

Plaintiff seeks the appointment of counsel under 28 U.S.C. § 1915(e), which provides that "[t]he court may request an attorney to represent any person unable to afford counsel." The appointment of counsel is a privilege, not a statutory or constitutional right. *Brightwell v. Lehman*, 637 F.3d 187, 192 (3d Cir. 2011). The decision to appoint pro bono counsel involves a two-step analysis. First, a court must determine, as a threshold matter, whether a plaintiff's claim has "some merit in fact and law." *Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993). If a court finds that the action arguably has merit, it should then consider the following factors:

(1) the plaintiff's ability to present his or her own case;
(2) the complexity of the legal issues;
(3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigations;
(4) the amount a case is likely to turn on credibility determinations;
(5) whether the case will require the testimony of expert witnesses; and

---

[1] Because the Court finds that Plaintiff has failed to demonstrate extraordinary circumstances, the Court need not determine whether Defendants would be prejudiced by allowing late notice.

(6) whether the plaintiff can attain and afford counsel on his own behalf.

*Parham v. Johnson*, 126 F.3d 454, 457 (3d Cir. 1997) (citing *Tabron*, 6 F.3d at 155-56, 157 n.5). This list is not exhaustive, but rather provides guideposts for the Court. *Montgomery v. Pinchak*, 294 F.3d 492, 499 (3d Cir. 2002) (additional citations omitted). A court's decision to appoint counsel "must be made on a case-by-case basis." *Tabron*, 6 F.3d at 157-58. Additionally, the United States Court of Appeals for the Third Circuit has stated that "courts should exercise care in appointing counsel because volunteer lawyer time is a precious commodity and should not be wasted on frivolous cases." *Montgomery*, 294 F.3d 499 (citing *Parham*, 126 F.3d at 458).

As to the initial question of whether Plaintiff's claims have merit, the Court notes that while Plaintiff's claims have been allowed to proceed, Plaintiff's medical malpractice claims against Defendants are no longer viable in light of the Court's denial of Plaintiff's motion for leave to file a late notice of claim. Thus, for the purposes of the present motion, the Court will assume that Plaintiff's remaining claims arising under the Eighth Amendment for deliberate indifference to a serious medical need have at least some merit. However, regardless of whether Plaintiff's claims have merit, the factual and legal issues "have not been tested or developed by the general course of litigation, making [a number of factors] of *Parham's* test particularly difficult to evaluate." *See Chatterjee v. Philadelphia Federation of Teachers,* 2000 WL 1022979 at *1 (E.D.Pa. July 18, 2000) (stating that unlike *Parham,* which concerned a directed verdict ruling, and *Tabron,* which involved summary judgment adjudication, plaintiff's claims asserted in the complaint and motions "have barely been articulated" and have a distinctive procedural posture).

Additionally, the Court notes that Plaintiff's arguments in support of his motion for the appointment of *pro bono* counsel arise primarily from Plaintiff's contention that the absence of appointed counsel will render it "impossible for Plaintiff to get the necessary [affidavits of merit]."

Dkt. No. 3 at p. 2. However, because Plaintiff's only remaining viable claims arise under the Eighth Amendment, and because "an affidavit of merit is not required to establish a cause of action to vindicate a federal constitutional right, even if that right arises out of medical treatment furnished to an inmate by licensed medical providers," Plaintiff no longer requires an affidavit of merit to proceed. *Seeward v. Integrity, Inc.*, 357 N.J. Super. 474, 479, 815 A.2d 1005, 1008 (App. Div. 2003).

The Court now turns to the factors set forth in *Tabron*. Plaintiff's filings with the Court thus far reflect literacy and the ability to reference relevant legal authority. For example, without the assistance of counsel, Plaintiff has filed a Complaint and an application to proceed *in forma pauperis*, and filed the present motions for the appointment of *pro bono* counsel, leave to file a late notice of claim and an extension of time to file an affidavit of merit. These filings themselves demonstrate that Plaintiff is capable of presenting his case. While Plaintiff argues that his status as an "inmate" renders him "unable to present and litigate" this matter, his filings demonstrate an ability to present his case. Dkt. No. 3 at p. 2.

As to the second *Tabron* factor, Plaintiff claims, without further explanation, that this is a "complicated medical lawsuit." Dkt. No. 3 at p. 2. In the absence of any argument by Plaintiff as to the complexity of his claims, and it appearing to the Court that the legal issues present in this matter do not appear to be particularly complicated, the Court finds that the second factor weighs against Plaintiff.

Under the third *Tabron* factor, Plaintiff contends that he "must conduct early investigations and depose all members from the cardiology team who treated him" as well Defendants. Dkt. No. 3 at p. 3. While the Court does not doubt that "investigations" will be required to pursue Plaintiff's claims, Plaintiff has failed to articulate which "investigations" he believes to be necessary and why

12

he is unable to conduct any such investigations on his own. Accordingly, in the absence of any explanation as to the "investigations" at issue, the Court finds that the third factor weighs against Plaintiff's request at this juncture.

As to the fourth and fifth factors under *Tabron*, Plaintiff claims only that he must "retain medical experts to review hundreds of pages of intricate medical records and provide testimony." *Id.* However, because discovery in this matter has not yet begun, it is premature to consider expert testimony and the likelihood the case will turn on credibility determinations. Accordingly, the Court finds that the fourth and fifth factors weigh against Plaintiff.

Turning to the sixth factor, while Plaintiff appears unable to retain his own counsel, and thus the final factor weighs slightly in Plaintiff's favor, this fact alone is not enough to justify the appointment of counsel. *See Christy v. Robinson*, 216 F. Supp. 2d 398, 410 (D.N.J. 2002) (denying application for pro bono counsel where indigency was the only one of the six factors . . . weigh[ing] in favor of appointment of counsel).

The Court recognizes that this litigation is in its beginning stages and that issues may arise throughout the course of this matter which may raise a question as to Plaintiff's need for counsel. Additionally, the Court acknowledges that Plaintiff's present application relied primarily on his need for counsel to assist him in obtaining affidavits of merit, which is now moot, and that Plaintiff may wish to file a renewed application for the appointment of *pro bono* counsel which presents arguments relevant his remaining claims. Accordingly, Plaintiff's motion for the appointment of *pro bono* counsel is DENIED without prejudice.

### C. Motion to Stay Deadline for Service of an Affidavit of Merit

Plaintiff's motion seeks to stay the deadline for the service of an affidavit of merit "until Plaintiff's motion for assignment of counsel is decided." Dkt. No. 14-1 at p. 3. In light of the

Court's denial of Plaintiff's motion for leave to file a late notice of claim, Plaintiff's only remaining viable claims are those brought under the Eighth Amendment for deliberate indifference to a serious medical need, which do not require an affidavit of merit. *See Seeward*, 357 N.J. Super. at 479, 815 A.2d at 1008. Accordingly, Plaintiff's motion to stay the deadline for the service of an affidavit of merit is DENIED.

### III.    CONCLUSION AND ORDER

In light of the foregoing, and the Court having considered this matter pursuant to Fed. R. Civ. P. 78;

**IT IS** on this 28th day of August, 2023,

**ORDERED** that Plaintiff's motion for leave to file a late notice of claim [Dkt. No. 4] is **DENIED**; and it is further

**ORDERED** that Plaintiff's motion for the appointment of *pro bono* counsel [Dkt. No. 3] is **DENIED without prejudice**; and it is further

**ORDERED** that Plaintiff's motion to stay the deadline for the service of an affidavit of merit [Dkt. No. 14] is **DENIED as moot**.

 s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**