UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MISAEL CORDERO,

                Plaintiff,

v.

IHUOMA NWACHUKWU, *et al.*,

                Defendants.

Civil Action No. 23-00373 (JXN)(JBC)

**OPINION**

**NEALS**, District Judge

    This matter comes before the Court on *pro se* Plaintiff Misael Cordero's ("Plaintiff") appeal of the Magistrate Judge's Opinion & Order dated August 28, 2023, denying Plaintiff's motions (1) for leave to file a late notice of claim under the New Jersey Tort Claims Act, (2) the appointment of *pro bono* counsel, and (3) to stay the deadline for the filing of an affidavit of merit (ECF No. 22); and Defendants' Ihuoma Nwachukwu, M.D. ("Nwachukwu"), Abu Ahsan, M.D. ("Ahsan") and Alejandrina Sumicad, R.N. ("Sumicad") (collectively "Defendants") motion for partial summary judgment (ECF No. 28). The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Plaintiff's appeal is **DENIED**, and Defendants' partial motion for summary judgment is **DENIED as moot**.

    **I.**    **BACKGROUND**

    On August 28, 2023, Magistrate Judge James B. Clark ("Judge Clark") issued a comprehensive Memorandum Opinion & Order (the "Memo Order") wherein he set forth all the facts alleged by Plaintiff in his Complaint. (*See* ECF No. 21.) The Court will, therefore, adopt the

Background section of Judge Clark's Memo Order in its entirety. For reference, the Court will briefly restate the relevant allegations:

> Plaintiff's Complaint in this action arises out of Plaintiff's allegations that he was wrongfully denied medical care while incarcerated at New Jersey State Prison and East Jersey State Prison. *See* [ECF] No. 1, Complaint. Plaintiff claims that he "has a family history of heart diseases" and "started suffering – on and off – from shortness of breath, upper back pain, high blood pressure, and a feeling that his heart was skipping a beat" while incarcerated at New Jersey State Prison. Complaint at ¶ 1-2. Plaintiff alleges that he "personally informed" Defendants Ahsan and Nwachukwu of the symptoms he was experiencing on "numerous occasions" and that Defendants Ahsan and Nwachukwu "repeatedly and adamantly assured" him that "nothing was wrong with his heart, and that [his] symptoms were caused by having to eat the bad prison food. …" *Id*. at ¶ 3-4.
>
> According to Plaintiff, Defendants Ahsan and Nwachukwu refused his request to be referred to a cardiologist and "place[d] . . . on diet meals" because they wanted to "save money to their employer" despite being "trained and well experienced medical providers" who knew that "not sending [Plaintiff] to a cardiologist and refusing to prescribe him diet food would harm [his] health and put his life at risk." *Id*. at ¶ 6-8. On an unspecified date, Plaintiff claims he "began to sweat profusely, got really dizzy, and was having difficulty breathing," which led to Plaintiff being "taken to the prison clinic on a wheelchair." *Id*. at ¶ 10. Although Plaintiff "told the nurse at the prison clinic that he believe[d] he was having a heart attack" and requested to be transported to a hospital, Plaintiff's request was denied and Defendants Ahsan and Nwachukwu again purportedly refused to refer Plaintiff to a cardiologist. *Id*. at ¶ 11-12.
>
> Subsequently, in July [] 2019, Plaintiff was transferred to East Jersey State Prison. *Id*. at ¶ 14. Plaintiff alleges that "[u]pon arrival," he informed Defendant Sumicad of his purported cardiac symptoms and again requested that he be referred to a cardiologist and prescribed diet meals. *Id*. at ¶ 15. Defendant Sumicad, however, "intentionally refused" Plaintiff's requests. *Id*. at ¶ 16.
>
> On March 4, 2022, Plaintiff "started suffering from dizziness, chest pain, and numbness of his left arm" and was subsequently transported to "Rahway University Hospital" in an ambulance. *Id*. at ¶ 22. Plaintiff claims that after arriving at the hospital, the medical staff confirmed he had suffered a heart attack. *Id*. at ¶ 23. The next day, after Plaintiff suffered a second heart attack, "it was discovered that Plaintiff [had] four blockages of his heart veins" and he was transferred to [Saint Barnabas Medical Center] for heart surgery. *Id*. at ¶ 24-25.
>
> According to Plaintiff, [on March 8, 2022,] a heart surgeon, identified by Plaintiff as Frederic F. Sardari, "performed a quadruple-by-passed surgery," subsequent to which Plaintiff was "interrogated extensively by members of a cardiology team" who then advised Plaintiff that his "heart attacks, the blockages, and the surgery could have been avoided if Plaintiff would have been provided with timely access

2

to a cardiologist and a proper diet." *Id*. at ¶ 26-27. Plaintiff further alleges that his "cardiology team" explained that "any medical provider should have been able to determine that prompt cardiac medical treatment and a good diet were needed because Plaintiff's early symptoms and family history of heart diseases are universal medical awareness of the fact that immediate cardiac medical treatment was imperative." *Id*. at ¶ 28.

Plaintiff claims that on May 17, 2022 he "filed a paper Inquiry" which was "ignored." *Id*. at 29. Then, on June 8, 2022, Plaintiff purportedly filed a "paper grievance," which was also "ignored." *Id*. Thereafter, on July 23, 2022, Plaintiff "sent a letter to the Administration of East Jersey State Prison asking the prison Administration to intervene . . . but the Administration never answered Plaintiff's letter." *Id*. After not receiving a response to his July 23, 2022 letter, Plaintiff claims to have sent a "certified letter to the Commissioner of the Department of Corrections . . . to establish that the administrative remedy system was made unavailable." *Id*.

Plaintiff's Complaint in this matter is dated January 13, 2023 and was filed with this Court on January 23, 2023. *See* Complaint. The Complaint asserts two causes of action against Defendants for medical malpractice and deliberate indifference to serious medical needs. *Id*.

(ECF No. 21 at 1-4.)

Along with his Complaint, Plaintiff filed motions seeking leave to file a late notice of claim (ECF No. 4) and for the appointment of pro bono counsel (ECF Nos. 3). Additionally, On July 21, 2023, Plaintiff filed a motion to stay the time to serve an affidavit of merit. (ECF No. 14.) In a Memo Order dated August 28, 2023, Judge Clark denied Plaintiff's (1) motion for leave to file a late notice of claim under the New Jersey Tort Claims Act ("NJTCA"), (2) motion for the appointment of *pro bono* counsel, and (3) motion to stay the deadline for the filing of an affidavit of merit. (*See* ECF No. 21.)

On September 14, 2023, Plaintiff filed an appeal of Judge Clark's Memo Order. (ECF No. 22.)[1] On October 2, 2023, Defendants opposed Plaintiff's appeal (ECF No. 26), and Plaintiff replied in further support on October 16, 2023 (ECF No. 27).

---

[1] On September 20, 2023, discovery was stayed pending disposition of Plaintiff's appeal of Judge Clark's Memo Order. (*See* ECF NO. 23.)

On December 22, 2023, Defendants filed a partial motion for summary judgment pursuant to Fed. R. Civ. P. 56(a) seeking dismissal of Plaintiff's medical malpractice claims, with prejudice, for failure to (1) serve an Affidavit of Merit within 120 days and (2) file a tort claim notice within 90 days of the accrual of his medical malpractice cause of action. (ECF No. 28.)[2]

## II. LEGAL STANDARD

### A. Appeal of a Magistrate Judge's Decision

A district judge may "set aside any portion of the Magistrate Judge's order found to be clearly erroneous or contrary to law." L. Civ. R. 72.1(c)(1)(A); *see also Haines v. Liggett Grp., Inc.,* 975 F.2d 81, 92 (3d Cir. 1992); *Grider v. Keystone Health Plan Cent., Inc.,* 580 F.3d 119, 146 (3d Cir. 2009) (citation omitted). The party filing the notice of appeal bears the burden of demonstrating that this standard is met. *Marks v. Struble,* 347 F.Supp.2d 136, 149 (D.N.J. 2004). A ruling is contrary to law "if the magistrate judge has misinterpreted or misapplied applicable law." *Id.* Legal conclusions on a non-dispositive motion are therefore reviewed *de novo. See, e.g., Doe v. Hartford Life and Accident Ins. Co.,* 237 F.R.D. 545, 548 (D.N.J. 2006). On the other hand, a factual finding is clearly erroneous when the reviewing court "is left with the definite and firm conviction that a mistake has been committed." *Marks,* 347 F.Supp.2d at 149. When "[r]eviewing a magistrate judge's factual determinations, a district court may not consider any evidence not presented to the magistrate judge." *Lithuanian Commerce Corp. Ltd. v. Sara Lee Hosiery*, 177 F.R.D. 205, 213 (D.N.J. 1997) (citing *Haines*, 975 F.2d at 93); *see also Essex Chem. Corp. v. Hartford Accident & Indem*. Co., 993 F.Supp. 241 (D.N.J. 1998).

---

[2] To date, Plaintiff has not filed an opposition to Defendants' partial motion for summary judgment. Instead, on March 5, 2024, Plaintiff filed an Amended Complaint. (ECF No. 29.) On March 20, 2024, Defendants filed an informal application requesting that Plaintiff's Amended Complaint be stricken. (ECF No. 32.) On March 25, 2024, Judge Clark issued a Letter Order striking Plaintiff's Amended Complaint for failure to comply with Fed. R. Civ. P. 15. (ECF No. 33.)

### B. Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law," and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id*.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents ..., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S.

at 250-51. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).

This same general analysis applies even when a summary judgment motion, as here, is unopposed. *See Rakowski v. City of Brigantine*, No. 19-21847, 2022 WL 326992, at *2 (D.N.J. Feb. 3, 2022) (citing *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168 (3d Cir. 1990)). However, L. Civ. R. 56.1 provides that "any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1(a).

## III. DISCUSSION

### A. Plaintiff's Appeal of Judge Clark's Memo Order

1. <u>Judge Clark's Denial of Plaintiff's Motion for Leave to File Late Notice of Claim</u>[3]

On appeal, Plaintiff argues that Judge Clark's "refus[al] to find extraordinary circumstances" even though he was recovering from quadruple bypass surgery and was subject to COVID-19 restrictions at East Jersey State Prison ("EJSP"), … "is contrary to the applicable law." (ECF No. 22 at 2-6.)

The New Jersey Tort Claims Act, N.J.S.A. 59:1-1 to 59:12-3 ("NJTCA" or "Act"), serves as a limited waiver of sovereign immunity by the State of New Jersey and controls the liability of New Jersey's public entities and their employees, including the New Jersey Department of Corrections, its prisons, and employees. *See, e.g., Gaston v. New Jersey*, 298 F. App'x 165, 167-68 (3d Cir. 2008); *N.J. Stat. Ann.* § 59:8-1, *et seq.* Under the NJTCA, a plaintiff seeking to

---

[3] Although a motion seeking to file a late notice of claim is not one of the motions enumerated in 28 U.S.C. § 636(b)(1), it is "dispositive of a claim" as provided for in Fed. R. Civ. P. 72(b) and therefore subject to *de novo* review.

6

"maintain an action against a public entity or public employee ... must file a notice of claim with either the State Attorney General or with 'the department or agency involved in the wrongful act or omission ... within 90 days of the accrual of the cause of action." *Gaston*, 298 F. App'x at 167-68 (quoting *N.J. Stat. Ann.* § 59:8-7). The statute's "guiding principle" is "that immunity from tort liability is the general rule and liability is the exception." *D.D. v. Univ. of Med. & Dentistry of N.J.*, 213 N.J. 130, 134 (2013) (quoting *Coyne v. Dep't of Transp.*, 182 N.J. 481, 488 (2005) (internal quotations omitted)). The Act, therefore, "imposes strict requirements upon litigants seeking to file claims against public entities." *McDade v. Siazon*, 208 N.J. 463, 468 (2011).

A person seeking to file a claim under the Act must file a notice of tort claim on a public entity or employee "not later than the ninetieth day after accrual of the cause of action." *McDade*, 208 N.J. at 468 (quoting N.J.S.A. 59:8-8). The failure to serve a notice of tort claim within the statutory ninety-day period bars the claim and recovery. *Id*. at 476; N.J.S.A. 59:8-8.

Plaintiff's cause of action accrued on March 8, 2022[4]—the date he underwent bypass surgery. *See Beauchamp v. Amedio*, 164 N.J. 111, 121, 751 A.2d 1047 (2000) (holding that, for the purposes of the ninety-day time limit, a tort claim accrues when a plaintiff learns she is injured and not when she learns that the injury is serious). Thus, Plaintiff had until June 6, 2022, to file a timely notice of claim. Plaintiff does not dispute that he failed to file his notice of claim within the ninety days set forth in N.J.S.A. 59:8-8. Plaintiff moved for leave to file a late notice of tort (ECF No. 4) on January 23, 2023, within one year of the accrual of his claim.

In limited circumstances, relief can be afforded under N.J.S.A. 59:8-9, which allows a plaintiff to move for leave to file a late notice "within one year after the accrual of [their]

---

[4] In the Memo Order, Judge Clark concluded "[w]ithout foreclosing any future finding that Plaintiff's claim accrued prior to his March 8, 2022 surgery, …for the purposes of the present motion, March 8, 2022, the date of Plaintiff's surgery, is the latest date upon which Plaintiff's claims accrued." (ECF No. 21 at 6.)

7

claim." *McDade*, 208 N.J. at 476 (quoting N.J.S.A. 59:8-9). The trial court may grant the motion if there are "'sufficient reasons constituting extraordinary circumstances' for the claimant's failure to timely file" a notice of tort claim within the statutory ninety-day period, and if "the public entity [or public employee is not] 'substantially prejudiced' thereby." *Id*. at 477 (quoting N.J.S.A. 59:8-9). Determining "extraordinary circumstances" and "substantial prejudice" requires a "trial court to conduct a fact-sensitive analysis of the specific case." *Id*. at 478

The Legislature intended the "extraordinary circumstances" requirement to be a demanding standard. *See D.D.*, 213 N.J. at 148 (citing *Lowe v. Zarghami,* 158 N.J. 606, 625 (1999)). When analyzing the facts, a court must determine how the evidence relates to the claimant's circumstances during the ninety-day period. *Id*. at 151. A court looks to the "severity of the medical condition and the consequential impact" on the claimant's ability to seek redress and to pursue a claim. *Id*. at 150; *see also Jeffrey v. State*, 468 N.J. Super. 52, 55 (App. Div. 2021) (finding extraordinary circumstances where the plaintiff was rendered a quadriplegic after an accident and remained completely disabled and unable to perform even rudimentary movements); *Mendez v. S. Jersey Transp. Auth.*, 416 N.J. Super. 525, 533-35 (App. Div. 2010) (determining the plaintiff's injuries and memory loss sustained in a motor vehicle accident that required weeks of hospitalization qualified as an extraordinary circumstance); *Maher v. Cnty. of Mercer*, 384 N.J. Super. 182, 189-90 (App. Div. 2006) (finding extraordinary circumstances where the medical condition of a plaintiff, who contracted a staph infection, was so severe that she was treated by an induced coma and not expected to survive).

Here, the Court finds that Plaintiff has failed to establish that his medical condition or the COVID-19-related restrictions at EJSP created extraordinary circumstances to excuse his failure to file a tort claim notice within the 90-day statutory period. First, Plaintiff concedes that he was not bedridden during the statutory period but was released to his housing unit approximately 22

days after surgery. (*See id.* at 5.) Like Judge Clark, the Court acknowledges that Plaintiff was "in a medically vulnerable state following his surgery." (ECF No. 21 at 9.) However, Plaintiff has not presented any facts demonstrating that his medical condition, following his release to his housing unit, was so "severe, debilitating, or uncommon" as to establish extraordinary circumstances justifying the late filing of the requisite notice of tort. *D.D.*, 213 N.J. at 150. The Court is cognizant of the necessary restrictions placed on Plaintiff and other EJSP inmates during the COVID-19 pandemic, which Plaintiff contends resulted in his inability to access the law library or legal assistance for certain periods.[5] As Judge Clark noted, however, and conceded by Plaintiff, "Plaintiff made demonstrable efforts to pursue various other avenues of redress during that [] time." (ECF No. 21 at 9.)[6] Thus, while Plaintiff asserts that COVID-19 restrictions at EJSP and his post-surgery recovery prevented him from timely filing the tort claim notice, Plaintiff managed to file several administrative grievances. As Plaintiff's alleged circumstances were not so restrictive as to prevent Plaintiff from filing these administrative grievances, Plaintiff had sufficient opportunity to file a timely notice of tort claim. Accordingly, Plaintiff cannot demonstrate extraordinary circumstances existed for the untimely filing of a tort claims notice, and his request for leave is denied.

Further, in light of the Court's denial of Plaintiff's motion for leave to file a late notice of claim, Plaintiff's medical malpractice claims against Defendants are no longer viable. Thus,

---

[5] The Court notes that Plaintiff makes varied claims regarding his access to legal resources during the 90-day statutory period. For example, while Plaintiff initially claims he had "no access to the prison law library nor to any legal assistance due to the stringent but necessary lockdowns and social distancing that were being enforced at [EJSP]" (ECF No. 22 at 4), he later claims that as a result of his medical condition, "the distance from the Plaintiff's housing unit to the prison law library is extremely far… Plaintiff could have not walked to attend the law library." (ECF No. 22 at 4.)

[6] In his Complaint, Plaintiff alleges that he filed a "paper Inquiry" on May 17, 2022, which was within the 90-day notice period, and a "paper grievance" on June 8, 2022, and subsequently sent letters to the prison administration and Department of Corrections. (Compl. ¶ 29.) In his appeal, Plaintiff also concedes that "[he] filed grievances and wrote two letters" during this time. (ECF No. 22 at 5.)

9

Plaintiff's remaining claims against Defendants are those arising under the Eighth Amendment for deliberate indifference to a serious medical need.

### 2. Judge Clark's Denial of Plaintiff's Motion for *Pro Bono* Counsel

While there is no right to counsel in a civil case (*see Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993); *Parham v. Johnson*, 126 F.3d 454, 456-57 (3d Cir. 1997)), "[t]he court may request an attorney to represent any person unable to afford counsel," 28 U.S.C. § 1915(e)(1). The District Court has significant discretion in deciding whether to appoint *pro bono* counsel. *Hopkins v. Medio*, No. CIV.A. 12-5134 JBS, 2015 WL 4770864, at *2 (D.N.J. Aug. 12, 2015). In making that determination, a court first must consider whether a plaintiff's claim "has some merit in fact and law." *Tabron*, 6 F.3d at 155. Once that initial threshold is satisfied, the court should consider the following additional factors, which the Third Circuit set forth in *Tabron*:

> (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; (6) whether the plaintiff can attain and afford counsel on his own behalf.

*Hopkins*, 2015 WL 4770864, at *2-3 (citing *Parham*, 126 F.3d at 457). "This list of factors is not exhaustive, nor is a single factor determinative." *Id*.

"Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge has authority to hear and determine non-dispositive pretrial matters," and "[d]ecisions on motions to appoint counsel are non-dispositive." *Turner v. Doe*, No. CV155942 (RBK/AMD), 2018 WL 6630511, at *3 (D.N.J. Dec. 19, 2018), *aff'd sub nom. Turner v. Scott*, 781 F. App'x 47 (3d Cir. 2019). Magistrate judges are given "wide discretion" in addressing such motions. *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

As noted above, when a party appeals a matter within the purview of a magistrate judge, this Court considers whether the judge's decision was clearly erroneous or contrary to law or an abuse of discretion. *See generally, Turner*, 781 F. App'x at 50 n.3; *Williams v. Office of Dist. Att'y Erie Cty.*, 751 F. App'x 196, 198 (3d Cir. 2018); *Romero v. Ahsan*, No. CIV.A. 13-7695 (FLW), 2015 WL 5455838, at *3 (D.N.J. Sept. 16, 2015); *Rhett v. New Jersey*, No. CIV.A.07-1310 (DRD), 2007 WL 1456199, at *1-2 (D.N.J. May 14, 2007). Under the first prong, the movant bears the burden of showing that the magistrate judge misinterpreted or misapplied the law. *Romero*, 2015 WL 5455838, at *3; *Marks*, 347 F. Supp. 2d at 149. Under the second prong, "discretion is abused only where no reasonable man would take the view adopted by the trial court." *Id*.

Here, Plaintiff argues that Judge Clark's ruling denying his motion to appoint pro bono counsel was an abuse of discretion or "clearly erroneous or contrary to law." (ECF No. 122). In carefully reviewing the record, the Court finds that Judge Clark's decision to deny Plaintiff's request for counsel was consistent with controlling law. Judge Clark considered the *Tabron* factors for appointing *pro bono* counsel and concluded that such an appointment was unwarranted in light of the facts of this case. (*See* ECF No. 21.)

Specifically, Judge Clark found that Plaintiff's arguments in support of his motion "arise primarily from Plaintiff's contention that the absence of appointed counsel will render it 'impossible for Plaintiff to get the necessary [affidavits of merit].'" (ECF No. 21 at 11.) Judge Clark noted that "because Plaintiff's only remaining viable claims arise under the Eighth Amendment, and because 'an affidavit of merit is not required to establish a cause of action to vindicate a federal constitutional right, even if that right arises out of medical treatment furnished to an inmate by licensed medical providers,' Plaintiff no longer required an affidavit of merit to

11

proceed." (*Id*. at 12.) Further, in his analysis of the *Tabron*[7] factors, Judge Clark found that (first factor) Plaintiff's court filings "thus far reflect literacy and the ability to reference relevant legal authority" and the overall "ability to present his case" (*id*.); (second factor) "the legal issues present in this matter do not appear to be particularly complicated" (*id*.); (third factor) "Plaintiff failed to articulate which "investigations" he believes to be necessary and why he is unable to conduct any such investigations on his own (*id*. at 12-13); (fourth and fifth factors) while Plaintiff claimed that he must "retain medical experts to review hundreds of pages of intricate medical records and provide testimony," Judge Clark concluded that "because discovery in this matter has not yet begun, it is premature to consider expert testimony and the likelihood the case will turn on credibility determinations" (*id*. at 13); and (sixth factor) "while Plaintiff appears unable to retain his own counsel, and thus the final factor weighs slightly in Plaintiff's favor, this fact alone is not enough to justify the appointment of counsel" (*id*.). As such, Judge Clark found that the *Tabron* factor weighed against appointing *pro bono* counsel at this stage in the litigation.

The Court has carefully reviewed Judge Clark's analysis of the *Tabron* factors and finds no indication that Judge Clark misinterpreted or misapplied the law. *See Romero*, 2015 WL 5455838, at *3; *Marks*, 347 F. Supp. 2d at 149. The Court further finds that Judge Clark's determination to deny *pro bono* counsel at this stage of the litigation was not an abuse of discretion such that "no reasonable man would take the view adopted by the trial court." *Id*.

Accordingly, Plaintiff has not met his burden of showing that Judge Clark misinterpreted or misapplied the law or abused his discretion. For the foregoing reasons, Plaintiff's appeal of Judge Clark's Memo Order denying the appointment of *pro bono* counsel is denied.

---

[7] To determine whether appointed counsel is warranted, the Court must apply the analysis formulated by the Third Circuit in *Tabron*, 6 F.3d 147.

12

3. <u>Judge Clark's Denial of Plaintiff's Motion to Stay the Deadline for Service of the Affidavit of Merit</u>

Lastly, Plaintiff appeals Judge Clark's denial of his request to stay the deadline to serve an affidavit of merit. (*See* ECF No. 22 at 9-10.)

New Jersey law requires an Affidavit of Merit in an action alleging professional malpractice. *See* N.J.S.A. §§ 2A:53A–26 to 29. The Affidavit of Merit requirement is triggered by the filing of the defendant's answer:

> Within 120 days after the defendant files an answer, the malpractice plaintiff must file such an affidavit from an appropriate licensed professional. That [Affidavit of Merit] must state, to a reasonable probability, that the defendant's conduct fell short of accepted standards in the relevant profession. The case will be dismissed if a proper, timely [Affidavit of Merit] is not filed.

*Szemple v. Univ. of Med. & Dentistry of New Jersey*, 162 F. Supp. 3d 423, 425–26 (D.N.J. 2016).

Here, the Court finds that Judge Clark correctly denied Plaintiff's request to stay the deadline to serve an Affidavit of Merit as "Plaintiff's only remaining viable claims are those brought under the Eighth Amendment for deliberate indifference to a serious medical need, which do not require an affidavit of merit." (ECF No. 22 at 14) (citing *Seeward v. Integrity, Inc.*, 357 N.J. Super. 474, 479, 815 A.2d 1005, 1008 (App. Div. 2003)). As an Affidavit of Merit is not required for claims alleging deliberate indifference to serious medical needs, Plaintiff's appeal of Judge Clark's ruling denying his request for a stay of the deadline to file an Affidavit of Merit is denied.

**B. Defendants' Motion for Partial Summary Judgment**

As noted above, Plaintiff's medical malpractice claims have been constructively dismissed based on the Court's denial of Plaintiff's motion to file a late notice of tort claim. As a result, Defendants' Motion for Partial Summary Judgment (ECF No. 28) is denied as moot.

## IV. CONCLUSION

For the reasons set forth herein, Plaintiff's appeal of the Magistrate Judge's Opinion & Order dated August 28, 2023, denying Plaintiff's motions (1) for leave to file a late notice of claim under the New Jersey Tort Claims Act, (2) the appointment of *pro bono* counsel, and (3) to stay the deadline for the filing of an affidavit of merit (ECF No. 22) is **DENIED**, and Judge Clark's Memo Order is **AFFIRMED**. Further, Plaintiff's medical malpractice claims, Count B in Plaintiff's Complaint, are hereby **DISMISSED with prejudice**. Lastly, Defendants' motion for partial summary judgment (ECF No. 28) is **DENIED as moot**. An appropriate Order accompanies this Opinion.

**DATED:** September 5, 2024

_____<br>
**JULIEN XAVIER NEALS**<br>
**United States District Judge**