**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| MISAEL CORDERO,<br><br>Plaintiff,<br><br>v.<br><br>IHUOMA NWACHUKWU, *et al.,*<br><br>Defendants. | Civil Action No. 23-00373 (JXN)(JBC)<br><br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is *pro se* Plaintiff Misael Cordero's ("Plaintiff") amended civil rights complaint ("Amended Complaint") filed pursuant to 42 U.S.C. § 1983. (ECF No. 56.) The Court previously granted Plaintiff's application to proceed *in forma pauperis*. (ECF No. 5.) The Court must now review the Amended Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons stated herein, the Amended Complaint shall proceed in part.

I.      **BACKGROUND**

A.      **Factual Background**

Plaintiff, a prisoner presently confined at the East Jersey State Prison located in Rahway, New Jersey, filed an Amended Complaint in this matter on November 18, 2025. (*See* Am. Compl., ECF No. 56.) The Amended Complaint raises claims against Defendants Abu Ahsan, M.D. ("Ahsan"); Ihuoma Nwachukwu, M.D. ("Nwachukwu"); Alejandrina Sumicad, N.P. ("Sumicad"), employees of New Jersey State Prison, (together, "Medical Defendants") and Gary Lanigan

("Lanigan"), the Commissioner of the New Jersey Department of Corrections ("NJDOC"), (the Medical Defendants and Lanigan are collectively referred to as "Defendants"). (*See id.* ¶¶ 4–7.) The Court construes the Amended Complaint as raising the claims for deliberate indifference to medical needs under the Eighth Amendment and medical malpractice claims against Defendants. (*See generally id.*)

According to the Amended Complaint, Defendants "intentionally and maliciously refused to allow Plaintiff to be examined by a cardiologist, refused to prescribe him a heart healthy diet" and blocked another medical provider's recommendation that Plaintiff see a cardiologist, in violation of Plaintiff's Eighth Amendment rights. (*Id.* at *2–3.)[1]

Plaintiff alleges that his family shares an extensive history of heart-related diseases. (*Id.* ¶ 9.)[2] While in custody, Plaintiff began suffering from persistent "shortness of breath, upper back and chest pain, high blood pressure, rapid palpitations," and a sensation of his heart skipping a beat. (*Id.* ¶ 10.) On several occasions, Plaintiff informed Ahsan and Nwachukwu, while at New Jersey State Prison, and Sumicad, while at East Jersey State Prison, of his symptoms and family medical history. (*See id.* ¶ 11.) Plaintiff also requested a referral to a cardiologist and "diet meals" from the Medical Defendants on multiple occasions. (*See id.* ¶¶ 11–14.) The Medical Defendants continuously reassured Plaintiff that he did not suffer from a cardiovascular-related disorder. (*Id.* ¶ 13.) Plaintiff alleges that the Medical Defendants refused to refer him to a cardiologist to save NJDOC money, which Plaintiff describes as a common practice of the prison medical providers in New Jersey. (*See id.* ¶¶ 15, 25.)

---

[1] Pincites preceded by an asterisk (*) use ECF pagination.

[2] Plaintiff states that his mother died of heart complications in her thirties and that other family members have suffered heart attacks and undergone open-heart surgery. (*See id.*)

On an unspecified date, the housing unit officer called an emergency medical code when Plaintiff began to sweat profusely, became dizzy, and was having trouble breathing. (*Id*. ¶ 18.) Plaintiff alleges that he was taken to the prison clinic in a wheelchair. (*Id*.) There, an unnamed clinic nurse denied Plaintiff's request to be sent to the hospital and instead prescribed him steroids for "asthma." (*Id*. ¶ 19.) Plaintiff submits he has never had asthma. (*Id*.) Afterward, Plaintiff informed Nwachukwu of his medical emergency and reiterated his request to see a cardiologist. (*Id*. ¶ 20.) Nwachukwu refused. (*Id*.) Plaintiff also alleges that a Nurse Practitioner named Donique Ivery referred Plaintiff to a cardiologist, but Nwachukwu and Ahsan, along with a review committee, rescinded the referral. (*Id*. ¶ 17.)

In July 2019, Plaintiff was transferred from New Jersey State Prison to East Jersey State Prison. (*Id*. ¶ 23.) There, Plaintiff informed Sumicad about his persistent cardiac symptoms. (*Id*.) As with Nwachukwu and Ahsan, Sumicad, on several occasions, refused to refer Plaintiff to a cardiologist or to prescribe "diet meals." *(Id*.) Sumicad also informed Plaintiff that his symptoms were caused by a thyroid issue. (*Id*. ¶ 27.)  On March 4, 2022, the Medical Director of East Jersey State Prison sent Plaintiff to Rahway University Hospital ("Rahway") because Plaintiff was experiencing dizziness, chest pain, and numbness in his left arm. (*Id*. ¶ 30.) There, Plaintiff alleges that he was treated by a doctor who confirmed that Plaintiff had suffered a heart attack. (*Id*. ¶ 31.) Plaintiff was then admitted to Rahway. (*Id*.) The following day, Plaintiff had another heart attack. (*Id*. ¶ 32.) Afterward, medical professionals at Rahway performed a cardiac catheterization on Plaintiff, which revealed Plaintiff had four blockages in his cardiac veins. (*Id*.) Plaintiff was transferred to Saint Barnabas Medical Center ("Saint Barnabas") for heart surgery. (*Id*.) On or about March 8, 2022, Plaintiff underwent a quadruple bypass surgery. (*Id*. ¶ 33.)

Plaintiff submits that his "cardiology team" at Saint Barnabas advised him that the heart attacks, blockages, and surgery were avoidable if he had "timely access to a cardiologist." (*Id*. ¶ 34.) Moreover, the medical professionals at Saint Barnabas explained that any medical provider should have determined that early cardiac intervention was needed, given Plaintiff's symptoms and family history. (*Id*. ¶ 35.) Plaintiff alleges that as a "direct and proximate result" of the Medical Defendants' deliberate indifference toward his condition, he suffered "serious and severe injuries," including two heart attacks and a quadruple bypass surgery. (*Id*. ¶ 22.) Plaintiff contends that his life expectancy was diminished because of the Medical Defendants' care, or lack thereof. (*Id*.) Plaintiff asserts that for most of the relevant period, Lanigan served as the Commissioner of the NJDOC. (*Id*. ¶ 40.) As Commissioner, Lanigan was responsible for implementing policies and procedures at NJDOC facilities, including the NJDOC Health Services Unit's budget. (*Id*.) Plaintiff further alleges that Lanigan had knowledge of Ahsan's, Nwachukwu's, and Sumicad's custom of neglecting inmates' medical needs to save NJDOC money. (*Id*. ¶ 42.)[3]

## B.    Procedural Background

Plaintiff filed his initial Complaint on January 23, 2023, (ECF No. 1) along with an application to proceed *in forma pauperis* (ECF No. 1–1). The Court granted Plaintiff's *in forma pauperis* application on April 26, 2023, and after screening the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A, allowed Plaintiff's Eighth Amendment and medical malpractice claims to proceed against the Medical Defendants. (Mem. and Order, ECF No. 5.) On August 28, 2023, Magistrate Judge James B. Clark, III ("Judge Clark") denied Plaintiff's request to file a late notice of tort claim for his medical malpractice claim.[4] (*See* Op. and Order, ECF No. 21.) Plaintiff

---

[4]The New Jersey Tort Claims Act ("NJTCA") "requires a claimant to sign and file a notice of tort claim . . . with the public entity within 90 days from accrual of the cause of action." *Tripo v. Robert Wood Johnson Med. Ctr.*, 845 F. Supp. 2d 621, 626 (D.N.J. 2012) (citing N.J.S.A. § 59:8–8). Judge Clark found that Plaintiff filed his initial Complaint

appealed. (ECF No. 22.) The Medical Defendants subsequently moved for partial summary judgment on Plaintiff's medical malpractice claim. (ECF No. 28.) On September 5, 2024, this Court issued an Opinion and Order affirming Judge Clark's August 28, 2023 decision, dismissing Plaintiff's medical malpractice claim against Defendants with prejudice, and denying the Medical Defendants' motion for partial summary judgment as moot. (*See generally* Sept. 5, 2024, Op. and Order, ECF Nos. 36, 37.)

Plaintiff moved for leave to file an Amended Complaint. (ECF Nos. 35, 45.) On July 28, 2025, Judge Clark granted Plaintiff's motion in part and denied it in part, allowing Plaintiff to add Lanigan as a Defendant in this case but denying Plaintiff's proposed medical malpractice claims against Defendants Nwachukwu, Ahsan, and Sumicad. (*See* ECF No. 53.)[5]

On November 18, 2025, Plaintiff filed his Amended Complaint seeking declaratory judgment, along with compensatory, nominal, and punitive damages, as well as attorneys' fees and costs. (*See* Am. Compl. at *17–18.)

## II.    **LEGAL STANDARD**

District courts must review complaints in civil actions in which a plaintiff is proceeding *in forma pauperis*, *see* 28 U.S.C. § 1915(e)(2)(B), or seeks redress against a governmental employee or entity, *see* 28 U.S.C. § 1915A(a). District courts may *sua sponte* dismiss any claim that is frivolous or malicious, fails to state a claim upon which the court may grant relief, or seeks monetary relief from a defendant who is immune from such relief. *See* §§ 1915(e)(2)(B), 1915A(b).

---

well beyond NJTCA's 90-day deadline and failed to show extraordinary circumstances warranting an exception to the notice requirement. (*See* Op. and Order 6–10.)

[5] Plaintiff also moved to appoint *pro bono* counsel, which Judge Clark terminated pending screening of the Amended Complaint. (ECF No. 53 at 3.)

The legal standard for dismissing a complaint for failure to state a claim pursuant to §§ 1915(e)(2)(B) or 1915A is the same as that pursuant to Federal Rule of Civil Procedure 12(b)(6). *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012); *Courteau v. United States*, 287 F. App'x 159, 162 (3d Cir. 2008). A court properly grants a motion to dismiss pursuant to Rule 12(b)(6) only if, "accepting all well pleaded allegations in the complaint as true, and viewing them in the light most favorable to plaintiff, plaintiff is not entitled to relief." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1420 (3d Cir. 1997) (quotations and citations omitted).

To survive *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 483 n.17 (3d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Moreover, while pro se pleadings are liberally construed, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## III.   **DISCUSSION**

### A.   **Eighth Amendment Deliberate Indifference Claim**

The Amended Complaint alleges Defendants are liable to Plaintiff under 42 U.S.C. § 1983 for violating his Eighth Amendment rights. (*See generally* Am. Compl.) A plaintiff may have a cause of action under § 1983 for violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen

> of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Thus, to obtain relief under § 1983, a plaintiff must establish: (1) that one of his rights secured by the Constitution or laws of the United States was violated; and (2) that this violation was caused or committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Here, the Court construes Plaintiff's Amended Complaint to allege an Eighth Amendment deliberate indifference to medical care claim pursuant to § 1983 against Defendants Ahsan, Nwachukwu, Sumicad, and Lanigan.

To state a claim under 42 U.S.C. § 1983 for the denial of medical care in violation of the Eighth Amendment, a plaintiff must establish that a defendant acting under color of state law showed deliberate indifference to his serious medical needs. *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Deliberate indifference requires proof that the defendant "knows of and disregards an excessive risk to inmate health or safety," *Natale v. Camden County Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)), which constitutes "unnecessary and wanton infliction of pain," *Estelle*, 429 U.S. at 104. A plaintiff can state a claim under the Eighth Amendment by alleging (1) a serious medical need; (2) that the defendant was deliberately indifferent to that need; and (3) that the deliberate indifference caused harm to the plaintiff. *See Durham v. Kelley*, 82 F.4th 217, 229 (3d Cir. 2023).

### i.       *Medical Defendants*

Plaintiff's Eighth Amendment deliberate indifference claim against the Medical Defendants may proceed. The Court finds that Plaintiff has sufficiently alleged that (1) he has a serious medical need, he suffered from symptoms associated with cardiovascular-related conditions (*id*. ¶ 10); (2) Ahsan, Nwachukwu, and Sumicad denied his multiple requests for a referral to a cardiologist and a specialized diet, despite Plaintiff's persistent symptoms and family medical history (*id*. ¶¶ 10–11); and (3) as a result of the Medical Defendants' deliberate indifference to his medical needs, he suffered "serious and severe injuries," including two heart attacks and a quadruple bypass surgery (*id*. ¶¶ 22, 29). Accordingly, at this stage, Plaintiff may proceed with his deliberate indifference claim against the Medical Defendants. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582, (3d Cir. 2003) ("we have found deliberate indifference [to medical care] in situations where there was 'objective evidence that [a] plaintiff had serious need for medical care,' and prison officials ignored that evidence.") (quoting *Nicini v. Morra*, 212 F.3d 798, 815 n.14 (3d Cir. 2000).

### ii.       *Lanigan's Supervisory Liability*

Plaintiff alleges that Lanigan, as the Commissioner of the NJDOC during the relevant period, is liable to Plaintiff. (*See generally* Am. Compl.) The Court construes the Amended Complaint as asserting supervisory liability claims against Lanigan. (Am. Compl. ¶¶ 50–52.)

A plaintiff may establish supervisory liability under § 1983 by showing: (1) liability based on an establishment of policies, practices, or customs that directly caused the constitutional violation; or (2) personal liability based on the supervisor participating in the violation of the plaintiff's rights, directing others to violate the plaintiff's rights, or having knowledge of and acquiescing to a subordinate's conduct. *Doe v. New Jersey Dep't of Corr.*, No. 14-5284, 2015 WL

8

3448233, at *9 (D.N.J. May 29, 2015). "Allegations of participation or actual knowledge and acquiescence . . . must be made with appropriate particularity." *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1987). "Only those defendants whose inactions or actions personally caused [Plaintiff's] injury may be held liable under § 1983." *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1147 (3d Cir. 1990). In other words, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*." *Rode*, 845 F.2d at 1207.

"[T]o hold a supervisor liable . . . [for their deficient policy or practice] . . . the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)).

The Amended Complaint alleges that the NJDOC has a custom of saving money by denying prisoners access to medical specialists and treatment. (Am. Compl. ¶¶ 15, 42.) Plaintiff alleges that Lanigan, as Acting Commissioner, is responsible for the "development, promulgation, and implementation of policies, procedures, and standards for the correctional facilities within the NJDOC." (*Id*. ¶ 40.) Plaintiff further alleges that Lanigan has knowledge of the custom and failed to correct the issue through training or discipline. (*Id*. ¶ 43.)[6] *See Barkes v. First Corr. Med., Inc*., 766 F.3d 307, 325 (3d Cir. 2014), *overruled on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015) ("[A]n Eighth Amendment claimant need not show that a prison official acted or failed to

---

[6] Plaintiff also submits that Lanigan was aware of Ahsan, Nwachuku, and Sumicad's "history of mistreating inmates by being negligent and deliberate indifferent to their medical needs." (*Id*. ¶ 41.)

9

act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm."). Together with Plaintiff's alleged injuries, these allegations are sufficient to sustain Plaintiff's supervisory liability claim against Lanigan under § 1983. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) ("a policy or custom may also exist where 'the policymaker has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of [the] existing practice [is] so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.'") (internal citations and quotations omitted).

Accordingly, Plaintiff may proceed with his Eighth Amendment deliberate indifference claim under § 1983 against Defendants.

### B.   Medical Malpractice

The Amended Complaint reasserts Plaintiff's medical malpractice claims, which this Court previously dismissed with prejudice. (*See* Sept. 5, 2024 Order 1). Because those claims were dismissed, the Court need not address them further. *See Jones v. Educ. Testing Serv.*, No. 23-20326, 2025 WL 1549227, at *2 n.6 (D.N.J. May 30, 2025) (citing *Progme Corp. v. Comcast Cable Commc'ns LLC*, No. 17-1488, 2017 WL 5070723, at *4 (E.D. Pa. Nov. 3, 2017) ("By its very nature, a dismissal with prejudice means that it is final and binding.")). The Court therefore adopts its discussion in its September 5, 2024 Opinion regarding Plaintiff's medical malpractice claims (*see* Sept. 5, 2024, Op. 6–10), and Plaintiff's medical malpractice claims remain dismissed.

### IV.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's Amended Complaint (ECF No. 56), specifically Plaintiff's Eighth Amendment deliberate indifference to medical needs claims under § 1983, may

**PROCEED** against Defendants. Plaintiff's medical malpractice claims, which this Court previously dismissed with prejudice (*see* ECF Nos. 36, 37), remain **DISMISSED** *with prejudice*. An appropriate Order accompanies this Opinion.

DATED: 6/10/2026

JULIEN XAVIER NEALS
United States District Judge